## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSEPH PETITFRERE,

           Plaintiff,

-vs-                                  Case No.  6:04-cv-458-Orl-18KRS

AJA RESTAURANTS, INC., d/b/a Miami
Subs Grill, MANUEL TATO, II,

           Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on Joseph Petitfrere's Motion

For Entry of Default Judgment Against Defendant, AJA Restaurants, Inc (AJA).  Doc. No. 20.

AJA has not responded to the motion for entry of default judgment.  This matter was referred to

me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I.     PROCEDURAL HISTORY.**

      On April 2, 2004, Petitfrere filed a complaint against AJA and Manuel Tato, II

(collectively the defendants), alleging violations of the minimum wage and overtime provisions of

the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., Chapter 448 of the Florida Statutes,

and Florida common law.  Doc. No. 1.  Petitfrere alleges that AJA and Tato failed to pay him

overtime compensation and minimum wages and that AJA failed to pay him for a week of vested

vacation pay.  Petitfrere also seeks liquidated damages, attorney's fees and costs.

The complaint was served on AJA and Tato on April 21, 2004. Doc. Nos. 6 & 7. The defendants filed an answer, doc. no. 8, and the Court entered a Case Management and Scheduling Order (CMSO), doc. no. 12. Shortly thereafter, counsel for the defendants filed a motion seeking leave to withdraw from the case, which was granted. Doc. Nos. 13 & 14.

On November 9, 2004, G. Kendall Sharp, the presiding District Judge, ordered AJA to obtain new counsel within twenty days. Doc. No. 16. AJA failed to comply with this Order. Thereafter, Judge Sharp granted Petitfrere's motion for entry of a default against AJA for failure to comply with the Court's order. Doc. No. 18. Pursuant to this Order, the Clerk of Court entered a default against AJA. Doc. No. 19. On March 2, 2005, Petitfrere file a motion for entry of default judgment against AJA.[1] Doc. No. 20.

## II.     STANDARD OF REVIEW.

Pursuant to Fed. R. Civ. P. 16(f), "[i]f a party . . . fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Rule 37(b)(2)(C) authorizes the court, when appropriate, to strike pleadings, stay proceedings, dismiss the action or any part therefor, or render a judgment by default against a disobedient party.

---

[1] On May 3, 2005, Judge Sharp entered an Order requiring Tato to show cause why his answer should not be stricken and a default judgment entered against him for failure to comply with Court orders. Doc. No. 28. Tato has yet to respond to the Show Cause Order and the time for doing so has passed. This report and recommendation only concerns Petitfrere's motion for entry of default judgment against AJA.

A defendant whose answer is stricken as a sanction under Rules 16(f) & 37(b)(2)(C) admits all well-pleaded allegations of the complaint as to liability for purposes of default judgment. *See, e.g., DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127-29 (M.D. Ala. 2004). However, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for the purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2nd Cir. 1997) (citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id*.

### III.     ALLEGATIONS OF THE COMPLAINT.

Petitfrere was employed by AJA at its Miami Subs Grill location in Longwood, Florida.

The business engaged in commerce as defined by the FLSA.  Complaint ¶¶ 4, 6.  Tato was the

owner or officer of AJA.  *Id.* ¶ 9.  Tato was substantially in control of the terms and conditions of

Petitfrere's work.  *Id.*  AJA willfully failed to compensate Petitfrere at the statutory overtime rate

for work in excess of forty hours a week, and it failed to pay him a minimum wage from

September 16 through September 30, 2003.  *Id.*  ¶¶ 12, 14.  AJA also did not pay Petitfrere for one

week of vested vacation pay.  *Id.* ¶ 18.

### IV.     ANALYSIS.

A.     <u>Sanctions Are Warranted Against AJA Pursuant to Federal Rules of Civil Procedure 16(f) & 37(b)(2)(C).</u>

As previously discussed, AJA failed to obtain counsel after ordered to do so by the Court.

Apparently, AJA has completely lost interest in defending this action.[2]  Thus, I recommend that the

Court enter an Order striking AJA's answer as a sanction for its failure to obtain counsel and

defend this matter. *See Huynh*, 318 F. Supp. 2d at 1126-27.  I will now turn to Petitfrere's motion

for entry of default judgment against AJA.

B.     <u>State Law Claims</u>.

Before addressing the merits of Petitfrere's FLSA claim for unpaid overtime compensation,

I will briefly discuss his claims under Florida Statute 448 and Florida common law.  First and

foremost, Chapter 448 does not provide a private right of action to collect unpaid wages.  Counsel

---

[2] AJA has also failed to comply with many of the deadlines contained in the CMSO.

for the plaintiff has not cited to any case law authorizing such a right of action under Chapter 448, and I have found none.  *See, e.g.*, EMPLOYMENT IN FLORIDA: GUIDE TO EMPLOYMENT LAWS, REGULATIONS AND PRACTICES § 3 (Lexis 2004) (noting that Florida has no state law regulating minimum wage or hours worked).  Accordingly, AJA is not liable for any violations of Chapter 448.

To the extent that Petitfrere seeks to assert a claim for unpaid wages against AJA under a breach of contract theory pursuant to Florida common law, he has failed to plead the requisite basis for such a claim.  "'Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages.'"  *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002) (quoting *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st Dist. Ct. App. 1992)).  The complaint does not allege that Petitfrere had an oral or written contract with AJA.  Because this allegation was not made, AJA cannot be deemed to have admitted the existence of a contract.  Therefore, AJA is not liable for violation of breach of contract under Florida common law.[3]

---

[3] Petitfrere's claim for unpaid vested vacation pay was brought pursuant to "Chapter 448, Florida Statutes and Florida common law."  Complaint ¶ 18.

C.      FLSA Overtime Compensation Claim.[4]

1.      *Liability.*

To prevail on a claim for payment of overtime under the FLSA, Petitfrere must establish the

following:

First, that he was employed by AJA during the time period involved;

Second, that he was engaged in commerce or production of goods for commerce or
employed by an enterprise engaged in commerce or in the production of goods for
commerce; and

Third, that AJA failed to pay the overtime pay required by law.

*See* 3C Kevin F. O'malley et al., Federal Jury Practice and Instructions 637-38 (5th ed.

2001).

By defaulting, AJA admits that it employed Petitfrere during the relevant time period.  It

admits that Petitfrere was engaged in commerce as defined by the FLSA.  It admits that it failed to

compensate Petitfrere at the statutory overtime rate for work in excess of 40 hours a week.

Accordingly, AJA is liable to Petitfrere for overtime compensation due but unpaid.

2.      *Statute of Limitations*.

Under the FLSA, a claim for unpaid wages must be brought within two years after the cause

of action accrues, unless the violation was willful, in which case the claim must be brought within

three years.  29 U.S.C. § 255(a).  "[W]illful violations are those where 'the employer either knew

---

[4] Petitfrere did not address his claim for unpaid minimum wages in his motion for default
judgment.  Thus, it appears Petitfrere has abandoned this claim.  Accordingly, I will not address
any claims Petitfrere may have against AJA for unpaid minimum wages under the FLSA.

or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"

*Reich v. Dep't of Conservation & Natural Resources*, 28 F.3d 1076, 1084 (11th Cir. 1994) (quoting

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  By defaulting, AJA admits that any

violations were willful, thereby extending the statute of limitations to three years.  Complaint ¶ 12.

        3.    *Damages*.

        (a)    <u>Overtime Compensation</u>.

Under the FLSA, Petitfrere is entitled to one and a half times his regular rate of pay for all

hours worked in excess of 40 during a given workweek.  29 U.S.C. § 207.  It is well established

that "[a]s long as the minimum hourly rates established by [29 U.S.C. § 206] are respected, the

employer and employee are free to establish this regular rate at any point and in any manner they

see fit."  *Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424 (1945).  Thus, if

an employee is paid a salary on a weekly or bi-weekly basis, his regular hourly rate on which time

and a half must be paid is usually determined by diving the salary by the number of hours which

the salary is intended to compensate.  29 C.F.R. §§ 778.109, 778.113.

Petitfrere avers that he was compensated at a rate of $550.00 per week[5] from April 2, 2001

to January 25, 2003.  Petitfrere worked 90 weeks during this period.[6]  Affidavit of Joseph Petitfrere

¶¶ 6-7, doc. no. 20, ex. 2.  Petitfrere estimates that he worked approximately 50 hours per week

---

    [5] Petitfrere actually avers that he was paid $1,100.00 every two weeks during this period.
In accordance with 29 C.F.R. § 778.113(b), I will reduce his bi-weekly salary to a weekly formula.

    [6] There are 95 work weeks between April 2, 2001 and January 25, 2003, but I credit
Petitfrere's affidavit in which he states that he only worked 90 weeks during this period.

during this period, and he avers that he did not receive any overtime compensation during this period. *Id*. ¶ 7.

Petitfrere does not present any evidence concerning the number of hours his salary was intended to compensate during this period. I will, assume, therefore, that Petitfrere's weekly salary was intended to compensate him for a 50 hour workweek during the period of April 2, 2001 through January 25, 2003, which represents the actual number of hours he worked. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by *the total number of hours actually worked by him in that workweek for which such compensation was paid*.") (emphasis added); 29 C.F.R. § 778.113. Thus, Petitfrere is entitled to 900 hours[7] of unpaid overtime compensation at a rate of $5.50[8] per hour for this period, which equates to $4,950.00.

Petitfrere avers that he was compensated at a rate of $600.00 per week from January 26, 2003 to September 15, 2003, a period of 33 weeks. Affidavit of Joseph Petitfrere ¶ 8. Petitfrere estimates that he worked approximately 60 hours per week during this period, and he avers that he did not receive any overtime compensation during this period. *Id*. ¶ 9.

---

[7] The number of weeks worked (90) multiplied by the hours of unpaid overtime compensation for each week (10).

[8] Weekly salary ($550) divided by number of hours worked per week (50) equals $11.00 per hour. One and one-half times the hourly rate equals $16.50 per hour. With respect to the period April 2, 2001 through January 25, 2003, Petitfrere has already received $11.00 per hour worked. Therefore, he is entitled to the difference between the overtime rate ($16.50) and the amount he was paid, which equals $5.50 per hour additional overtime compensation due.

Petitfrere does not present any evidence concerning the number of hours his salary was intended to compensate during this period.  I will, assume, therefore, that Petitfrere's weekly salary was intended to compensate him for a 60 hour workweek during the period of January 26, 2003 through September 15, 2003, which represents the actual number of hours he worked.  Thus, Petitfrere is entitled to 660 hours[9] of unpaid overtime compensation at a rate of $5.00[10] per hour for this period, which equates to $3,300.00.

Petitfrere avers that he did not receive any compensation for work performed during the period of September 16, 2003 through September 30, 2003.  Affidavit of Joseph Petitfrere ¶ 10. Petitfrere avers that he worked 120 hours during this two-week period and that his regular rate of pay was $10.00 per hour.  *Id*.  Thus, Petitfrere is entitled to 40 hours[11] of unpaid overtime compensation at a rate of $15.00[12] per hour for this period, which equates to $600.00.

---

[9] The number of work weeks (33) multiplied by the hours of unpaid overtime compensation for each week (20).

[10] Weekly salary ($600.00) divided by the number of hours worked per week (60) equals a regular hourly rate of $10.00 per hour. The overtime rate is one and one-half times the regular hourly rate, which equals $15.00 per hour.  With respect to the period  January 26, 2003 to September 15, 2003, Petitfrere has already received her regular hourly rate of $10.00 per hour worked.  Therefore, he is entitled to the difference between the overtime rate ($15.00 per hour) and the amount he was paid ($10.00 per hour), which equals $5.00 per hour additional overtime compensation due.

[11] The total number of hours worked (120) minus the number of non-overtime hours worked (80).

[12] As noted above, Petitfrere did not receive any compensation for work performed during this period.  Thus, he is entitled to one and one-half times his regular rate for all overtime hours worked, which equals $15.00 per hour.

(b)     Liquidated Damages.

By defaulting, AJA admits that it acted willfully in failing to pay Petitfrere the statutorily required overtime compensation.  Complaint ¶ 12.  When, as here, the defendant has not presented a defense that the failure to pay minimum wages or overtime compensation was in good faith, the Court must also require the employer to pay liquidated damages in an additional amount equal to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be[.]"  29 U.S.C. §§ 216(b), 260; *see also Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).[13]  Accordingly, AJA is liable to pay Petitfrere the amount of unpaid overtime compensation owed to him, $8,850.00, as liquidated damages.

D.     Attorney's Fees and Costs.

The FLSA mandates that in any action brought by an employee to enforce section 206 or 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."  *Id*. at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

---

[13] Because Petitfrere is entitled to liquidated damages on his FLSA claim for unpaid overtime compensation, an award of prejudgment interest is not warranted.  *See, e.g., Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).

-10-

Petitfrere seeks an award of $1,650.00 for the services provided by his attorneys, Charles L. Scalise and Konstantine Pantas, in connection with this case.  Petitfrere also seeks an award of $883.50 for the services provided by Scalise's paralegal, Judy Escobedo.  The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'"  *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).  Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought.  *Hensley*, 461 U.S. at 433.

"[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.  Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney.  *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).  Services provided by paralegals are recoverable at the prevailing market rate.  *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees.  *See Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

       1.     *Hourly Rate.*

Scalise has been licensed in Florida since 1988.  He specializes in employment law.
Affidavit of Charles Scalise, doc. no. 20, ex. 3.  He seeks an hourly rate of $250.00.  I find that his
hourly rate is reasonable, in the absence of objection, in light of his experience and the work he
performed in this matter.

Pantas has been licensed in Florida since 1993.  He specializes in employment law.  *Id*.  He
seeks an hourly rate of $250.00.  I find that his hourly rate is reasonable, in the absence of
objection, in light of his experience and the work he performed in this matter.

Escobedo has been employed as a paralegal since 1999.  She has extensive experience in
drafting complaints, discovery, motions, and affidavits.  *Id*.  She seeks an hourly rate of $95.00.  I
find that her hourly rate is reasonable, in the absence of objection, in light of her experience and the
work she performed in this matter.

       2.     *Reasonable Number of Hours.*

Petitfrere submitted a detailed time statement indicating the work performed by Scalise,
Pantas and Escobedo in this case.  Some of the time sought cannot reasonably be charged to AJA.
Specifically, Scalise spent .9 hours reviewing and responding to a standard track notice and
interested persons order.  It could not reasonably take an attorney of Scalise's experience this much
time to perform such a routine task.  Thus, I recommend that the Court reduce these entries to .3
hours.

In addition, the billing records submitted by Petitfrere indicate that on July 20, 2004,
Escobedo spent .5 hours docketing a case management order.  The docket sheet does not reflect

that Escobedo or anyone from her firm "docketed" a case management order in this case or similar document on that date. Thus, this time cannot reasonably be charged to AJA. In addition, this is a purely clerical task not reasonably compensated at paralegal rates.

After these deductions, the reasonable number of hours per attorney or paralegal are as follows: Scalise 4.8; Pantas 1.2; and Escobedo 8.8.

The lodestar attorney's fees for the attorneys and paralegal that worked on this case are as follows:

| ATTORNEY OR PARALEGAL | HOURLY RATE | HOURS WORKED | TOTAL AWARD |
|---|---|---|---|
| Scalise | $250.00 | 4.8 | $1,200.00 |
| Pantas | $250.00 | 1.2 | $300.00 |
| Escobedo | $95.00 | 8.8 | $836.00 |
| **GRAND TOTAL** | | | $2,336.00 |

3.   *Costs.*

Petitfrere seeks an award of costs in the amount of $242.05 for the filing fee ($150.00) and for the costs of serving process in this case ($92.05). Affidavit of Charles Scalise ¶ 8, Doc. No. 20, ex. 2. Since the amount sought by Petitfrere for serving process includes the costs of serving Tato as well as AJA, I will reduce it by one half. Thus, I find that Petitfrere is entitled to an award of costs from AJA in the amount of $196.03.

**V.   RECOMMENDATION.**

Based on the foregoing analysis, I respectfully recommend that the Court strike the answer filed by AJA pursuant to Federal Rules of Civil Procedure 16(f) & 37(b)(2)(C) for failure to obtain

counsel and defend this action.  I further recommend that Petitfrere's Motion For Entry of Default

Judgment Against Defendant, AJA Restaurants, Inc (doc. no. 20) be **GRANTED**, in part, and

**DENIED**, in part, and that the Court (1) enter a default judgment against AJA on Petitfrere's FLSA

claim for unpaid overtime compensation, and (2) order AJA to pay Petitfrere damages in the

amount of $17,700.00; attorney's fees in the amount of $2,336.00; and costs in the amount of

$196.03.

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 7th, 2005.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge and Courtroom Deputy Clerk
Counsel of Record
Unrepresented Parties